RON BENDER (SBN 143364)
JOHN-PATRICK M. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: RB@LNBYB.COM; JPF@LNBYB.COM
Attorneys for Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

In re:

BRITELAB, INC., a Delaware Corporation

    Debtor and Debtor in Possession.

Case No. 5:23-bk-51520

Chapter 11 Case
Subchapter V

**DECLARATION OF ALI BUSHEHRI IN SUPPORT OF MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT WITH TIMOTHY LENIHAN**

<u>Hearing:</u>
Date: September 3, 2024
Time: 2:00 p.m.
Place: U.S. Bankruptcy Court
       Courtroom 9
       280 South First Street
       San Jose, CA 95113-3099[1]

---

[1] The hearing on this matter will take place remotely by video or telephone. No in-person appearance in the courtroom is available. The Bankruptcy Court's website provides information regarding how to arrange an appearance at a video or telephonic hearing. If you have questions about how to participate in a video or telephonic hearing, you may contact the courtroom deputy, Anna Lee, at (408) 278-7517 or email her at: anna_e_lee@canb.uscourts.gov. *See also* www.canb.uscourts.gov/calendars.

2

I, Ali Bushehri, hereby declare as follows:

1. I am an individual, over the age of 18. I currently serve as the CEO of BriteLab, Inc., the debtor and debtor-in-possession herein (the "Debtor"), as well as the Chairman of the Debtor's Board of Directors.

2. I make this declaration of my own personal knowledge, and if called as a witness, I could and would testify competently thereto, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

3. The Debtor filed its chapter 11 petition on December 29, 2023.

4. On February 23, 2024, Lenihan filed Claim 23, asserting a $350,973.12 severance claim.

5. The Debtor's books and records, which are maintained in the ordinary course of business, reflect that Timothy Lenihan ("Lenihan") is the Debtor's former CEO.

6. In Claim 23, Lenihan alleges that in July 2022, while exploring a potential sale, Lenihan, acting as CEO, caused the Debtor to enter into a severance agreement with himself, providing a $300,000 severance payment plus 18 months of COBRA benefits if terminated in connection with a change of control.

7. In Claim 23, Lenihan alleges that on August 11, 2023, the Debtor terminated Lenihan's employment.

8. On September 28, 2023, the Debtor closed a sale of its equity to BSC Investment Group, the Debtor's current owner.

9. On May 2, 2024, the Debtor filed its First Amended Chapter 11, Subchapter V, Plan of Reorganization (the "Plan").

10. On May 27, 2024, Lenihan filed his Objection to Debtor's First Amended Plan.

3

11. On May 30, 2024, the Debtor filed its Objection to Lenihan's Proof of Claim (Claim 23).

12. The Debtor's objection to Claim 23 raised various legal arguments against the claim's validity, including assertions that the severance agreement was unenforceable for lack of consideration, that the termination did not breach any implied covenant of good faith and fair dealing, that the COBRA premium claim constituted an unenforceable penalty under California law, and, even if it were allowed, it could be avoided pursuant to Section 548 of the Bankruptcy Code.

13. To avoid the expense and uncertainty of litigation, the Debtor and Lenihan have agreed to resolve their dispute through the proposed Settlement Agreement, which is attached hereto as Exhibit "1".

14. Under the terms of the Settlement Agreement, Lenihan will have an allowed priority unsecured claim of $10,000, to be paid on the effective date of the Debtor's confirmed Chapter 11 plan. In exchange, Lenihan waives all other claims against the Debtor and its estate.

15. I believe that the Settlement Agreement is in the best interests of the Debtor's estate as it resolves a significant disputed claim for a fraction of the asserted amount, avoiding costly litigation and allowing the Debtor to proceed with its reorganization efforts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 6th day of August, 2024, at San Jose, California.

ALI BUSHEHRI, Declarant

4

# EXHIBIT "1"

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement"), dated June [26], 2024, is made and entered into by BriteLab, Inc. ("Debtor"), on the one hand, and Timothy Lenihan ("Lenihan"), on the other hand. Debtor and Lenihan are the "Parties" and each a "Party".

## RECITALS

WHEREAS, on December 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), and the Debtor is a debtor in possession administering its estate pursuant to 11 U.S.C. §§ 1182(2) and 1184;

WHEREAS, on February 23, 2024, Lenihan filed Claim 23, asserting a $350,973.12 severance claim, comprised of $300,000 in cash severance and $50,973.12 for 18 months of COBRA premiums;

WHEREAS, on May 2, 2024, the Debtor filed its First Amended Chapter 11, Subchapter V, Plan of Reorganization (the "Plan") [Docket No. 54];

WHEREAS, on May 27, 2024, Lenihan filed his Objection to Debtor's First Amended Plan [Docket No. 58];

WHEREAS, on May 30, 2024, the Debtor filed its Objection to Lenihan's Proof of Claim (Claim 23) [Docket No. 60];

WHEREAS, the Debtor and Lenihan (collectively, the "Parties") desire to resolve any and all disputes between them and avoid the uncertainty and expense of litigation.

NOW THEREFORE, in consideration of the foregoing and recognition of the mutual covenants contained herein, and other good and valuable consideration, the parties hereby agree as follows:

1. Recitals Incorporated. Each of the Recitals listed above are incorporated into and made a part of this Agreement.

2. Effective Date of Agreement. The Parties agree that this Agreement is subject to Bankruptcy Court approval and shall be effective on the date the order approving this Agreement becomes final and non-appealable (the "Agreement Effective Date").

3. Stay of Deadline to Respond. While this settlement is pending before the Bankruptcy Court, Lenihan's deadline to respond to BriteLab's Objection to Claim is stayed. Should the Bankruptcy Court fail to approve this settlement, Lenihan shall have 14 days following the denial to file a response to the objection.

4. Allowance and Payment of Lenihan Claim. Upon the entry of an order by the Bankruptcy Court approving this settlement, Lenihan shall have a priority unsecured

claim pursuant to 11 U.S.C. § 507(a)(4) in the amount of ten-thousand dollars ($10,000) (the "Lenihan Claim") and no other claims against Debtor or Debtor's estate. The Lenihan Claim shall be paid in full on the effective date of the Debtor's confirmed Chapter 11 plan (the "Plan Effective Date"). Lenihan waives any and all other claims against the Debtor and its estate.

5. Release of Lenihan. Upon the Plan Effective Date, in consideration of the promises and releases contained herein, the Debtor, for and on behalf of itself, its bankruptcy estate, representatives, participants, affiliates, agents, owners, attorneys, shareholders, successors, assigns and insurers ("Debtor Releasors"), hereby fully and completely remises, releases and forever discharges Lenihan, and each of his agents, attorneys, accountants, successors, and insurers of and from any and all actions, causes of action, demands, debts, suits, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, judgments, liabilities, losses, obligations, expenses (including attorneys' fees, interest and costs), claims and demands whatsoever, in law or in equity, whether known or unknown, matured or unmatured, that the Debtor Releasors ever had, now have, shall or may have, or hereinafter attempt to assert against Lenihan that arise from or are related to the Debtor, the Bankruptcy Case, Lenihan's employment with the Debtor, or the severance agreement, as well as any actions, causes of action, demands, debts, suits, omissions, issues, or relationships, known or unknown, that have occurred or could have existed from the beginning of time through the execution of this Agreement; provided that the Debtor Releasors shall not be deemed to have released any obligations of Lenihan imposed by the terms of this Agreement.

6. Release of Debtor. Upon the Plan Effective Date, in consideration of the promises and releases contained herein, Lenihan, for and on behalf of himself, his representatives, affiliates, agents, attorneys, accountants, successors, assigns, and insurers ("Lenihan Releasors"), hereby fully and completely remises, releases, and forever discharges the Debtor and its agents, attorneys, officers, directors, employees, successors, shareholders, and insurers of and from any and all actions, causes of action, demands, debts, suits, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, judgments, liabilities, losses, obligations, expenses (including attorneys' fees, interest, and costs), claims, and demands, in law or in equity, whether known or unknown, matured or unmatured, that the Lenihan Releasors ever had, now have, shall or may have, or hereinafter attempt to assert against the Debtor related to the Debtor, the Bankruptcy Case, Lenihan's employment with the Debtor, or Lenihan's severance agreement, as well as any actions, causes of action, demands, debts, suits, omissions, issues, or relationships, known or unknown, that have occurred or could have existed from the beginning of time through the execution of this Agreement; provided that the Lenihan Releasors shall not be deemed to have released any obligations of the Debtor imposed or any rights provided by the terms of this Agreement.

7. Cal. Civ. Code § 1542. Each of the Parties have been made aware of, and understand, the provisions of California Civil Code Section 1542 ("Section 1542"), which provides: "A general release does not extend to claims which the creditor does not know or suspect to

exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Each of the Parties expressly, knowingly and intentionally waive any and all rights, benefits, and protections of Section 1542 and of any other state or federal statute or common law principle limiting the scope of a general release.

8. <u>Mutual General Release</u>. Upon the Plan Effective Date, in consideration of the mutual promises and releases contained herein:

   (a) The Debtor Releasors (as defined in Section 4 hereof), and
   (b) The Lenihan Releasors (as defined in Section 5 hereof),
   (each a "<u>Releasing Party</u>" and collectively the "<u>Releasing Parties</u>")

   hereby fully, simultaneously, and completely remise, release, and forever discharge each other from any and all actions, causes of action, demands, debts, suits, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, judgments, liabilities, losses, obligations, expenses (including attorneys' fees, interest and costs), claims and demands whatsoever, in law or in equity, whether known or unknown, matured or unmatured, that the Releasing Parties ever had, now have, shall or may have, or hereinafter attempt to assert against each other, arising from or related to the Debtor, the Bankruptcy Case, Lenihan's employment with the Debtor, Lenihan's severance agreement, or any other matter from the beginning of time through the execution of this Agreement, as more fully set forth in Sections 4 and 5 hereof.

   The foregoing release shall not extend to any obligations created by or rights provided under the terms of this Agreement. All other terms, conditions, and exceptions set forth in Sections 5 and 6 are hereby incorporated by reference and shall apply with equal force and effect to this Mutual General Release.

9. <u>Incorporation into Plan</u>. The Parties each agree and intend that the terms of this Agreement shall be incorporated into the Debtor's Chapter 11 plan, either through the Plan or the plan confirmation order.

10. <u>Support of Plan</u>. The Parties each agree to cooperate and mutually support confirmation of the Plan, so long as the Plan includes terms that are consistent with the provisions of this Agreement.

11. <u>Warranties</u>. As specified below, each of the Parties warrants and represents that:

    (a) It has not heretofore assigned, subrogated, transferred, encumbered, or purported to assign, subrogate, encumber, or transfer, to any person, firm, partnership, corporation or entity whatsoever any action(s) or cause(s) of action at law or in equity, suits, debts, demands, claims, contracts, covenants, liens, liabilities, losses, costs, accounts, expenses (including, without limitation attorneys' fees), or damages released in this Agreement;

Case: 23-51520    Doc# 84    Filed: 08/06/24    Entered: 08/06/24 10:01:47    Page 7 of 12

(b) Lenihan has full power and authority to execute and perform his obligations under this Agreement in all respects;

(c) The Debtor, upon final Bankruptcy Court approval, shall have full power and authority to execute and perform its obligations under this Agreement in all respects; and

(d) It has not relied upon the advice of any representative, agent or attorney of any of the other Parties, as to the legal or other consequences which attach from the assent to the terms of this Agreement.

12. <u>Final Disposition</u>. This Agreement is acknowledged to be a final and binding disposition of all claims set forth in this Agreement between the Parties, subject only to approval by the Bankruptcy Court.

13. <u>No Admission of Wrongful Conduct</u>. The Parties hereby acknowledge and agree that: (a) this Agreement was reached in compromise of disputed claims; (b) none of the Parties admits any unlawful or otherwise wrongful conduct or liability of any kind; and (c) nothing in this Agreement shall be construed as an admission of fault, liability, or wrongdoing by any of the Parties. The Parties further agree that the terms and conditions of this Agreement shall not be admissible or used as evidence in any proceeding between the Parties except any action brought to enforce or interpret the terms of this Agreement.

14. <u>Waiver of Construction against Drafter</u>. The Parties agree that this Agreement has been negotiated at arm's length among persons knowledgeable about the matters dealt with herein, and each Party participated in its drafting. Accordingly, any rule of law or other statute, legal decision, or common law principle which would require the interpretation of any ambiguities in this Agreement against the Party that drafted it is of no application and is expressly waived. The provisions of this Agreement shall be interpreted in a reasonable manner to effectuate the intentions of the Parties. Notwithstanding the foregoing, if any part of this Agreement is held by a court of competent jurisdiction to be illegal or contrary to public policy or otherwise unenforceable, such invalid part shall be deemed modified or eliminated to the extent necessary to make the remaining part enforceable.

15. <u>Costs and Fees</u>. Each of the Parties agree to pay all of their own costs and attorneys' fees associated with the disputes described in this Agreement.

16. <u>Choice of Law/Venue</u>. The Parties hereto agree that the terms of this Agreement shall be interpreted and construed pursuant to the laws of the State of California, without regard to choice of law, and the Bankruptcy Code. The undersigned Parties agree that any action arising from this Agreement is arising from or related to the Bankruptcy Case and venue for any action shall solely be the United States Bankruptcy Court for the Northern District of California - San Jose Division.

17. **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Electronically transmitted or copied signatures shall be as effective as original signatures.

18. **Entire Agreement.** This Agreement is the complete, final, and exclusive agreement between and among the Parties with respect to the subject matter hereof, and supersedes any and all prior agreements, negotiations, and understandings, whether written or oral. The Parties acknowledge and agree that no promises, agreements, statements, or representations not expressed in this Agreement have been made or are being relied upon by any party to this Agreement. This Agreement may not be amended, supplemented, modified, or waived, in whole or in part, except by a written instrument signed by all of the parties hereto.

IN WITNESS WHEREOF, the Parties have executed this document on the date set forth above:

BRITELAB, INC.

By: _____
ALI BUSHEHRI
CHIEF EXECUTIVE OFFICER

TIMOTHY LENIHAN

By: _____
TIMOTHY LENIHAN

[ATTORNEY SIGNATURES FOLLOW]

17. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Electronically transmitted or copied signatures shall be as effective as original signatures.

18. <u>Entire Agreement</u>. This Agreement is the complete, final, and exclusive agreement between and among the Parties with respect to the subject matter hereof, and supersedes any and all prior agreements, negotiations, and understandings, whether written or oral. The Parties acknowledge and agree that no promises, agreements, statements, or representations not expressed in this Agreement have been made or are being relied upon by any party to this Agreement. This Agreement may not be amended, supplemented, modified, or waived, in whole or in part, except by a written instrument signed by all of the parties hereto.

IN WITNESS WHEREOF, the Parties have executed this document on the date set forth above:

BRITELAB, INC.

By: _____
ALI BUSHEHRI
CHIEF EXECUTIVE OFFICER

TIMOTHY LENIHAN

By: _____
TIMOTHY LENIHAN

[ATTORNEY SIGNATURES FOLLOW]

Approved as to form only:

BRITELAB, INC.,
Debtor and debtor in possession

By: _____
    Ron Bender
    John-Patrick M. Fritz
    LEVENE, NEALE, BENDER,
    YOO & GOLUBCHIK L.L.P.

*Counsel for the Debtor and Debtor in Possession*


TIMOTHY LENIHAN

By: _____
    Corrine Bielejeski
    EAST BAY BANKRUPTCY LAW &
    FINANCIAL PLANNING

*Counsel for Timothy Lenihan*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A true and correct copy of the foregoing document entitled (*specify*): **Declaration Of Ali Bushehri In Support Of Motion For Approval Of Settlement Agreement With Timothy Lenihan** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 6, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M. Arnold     tma@lnbyg.com
- Ron Bender     rb@lnbyg.com
- Corrine Bielejeski     Corrine@EastBayBkLaw.com, EastBayBkLaw@gmail.com
- Trevor Ross Fehr     trevor.fehr@usdoj.gov
- John-Patrick M. Fritz     jpf@lnbyg.com, JPF@ecf.inforuptcy.com
- Gina R. Klump     gklump@klumplaw.net, C204@ecfcbis.com
- Office of the U.S. Trustee / SJ     USTPRegion17.SJ.ECF@usdoj.gov
- Gregory S. Powell     greg.powell@usdoj.gov, Tina.L.Spyksma@usdoj.gov
- Julie H. Rome-Banks     julie@bindermalter.com
- Cheryl C. Rouse     rblaw@ix.netcom.com

**2. SERVED BY UNITED STATES MAIL**: On (*date*) **August 6, 2024**,, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **August 6, 2024**,, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **August 6, 2024**, | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                       F 9013-3.1.PROOF.SERVICE